United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE NANAK FOUNDATION TRUST,　　　　　No. C-12-5647 EMC

　　　　　Plaintiffs,

　　　v.　　　　　　　　　　　　　　　　**ORDER TO SHOW CAUSE**

GMAC MORTGAGE, LLC, *et al.*,

　　　　　Defendants.
_____/

## I.  **INTRODUCTION**

The Court issues this order in response to Plaintiff the Nanak Foundation Trust's *Ex Parte* Application for a Temporary Restraining Order (TRO) against Defendants GMAC Mortgage, LLC (GMAC) and Federal National Mortgage Association (FNMA) filed on Friday, November 9, 2012. *See* TRO Application, Docket No. 9.  Plaintiff withdrew its TRO application before a hearing on the matter could be held.  *See* Notice of Withdrawal, Docket No. 18.  In Plaintiff's TRO application and attached verified complaint, Plaintiff's counsel, Kaivan Harouni, and one of Plaintiff's trustees, Gucharan Virk, submitted false and misleading information that could easily have been verified prior to submission with the Court.  Thus, the Court orders Plaintiff to show cause as to why sanctions should not issue against Mr. Harouni and Ms. Virk.

## II.  **BACKGROUND**

Plaintiff the Nanak Foundation Trust filed this action in Alameda County Superior Court on September 26, 2012.  *See* Notice of Removal, Docket No. 1, Ex. A.  Defendants GMAC and FNMA removed it to federal court on November 2, 2012.  *See* Notice of Removal, Docket No. 1.  Plaintiff

filed an ex parte application for a TRO on November 9, 2012 requesting that Defendants be prohibited from "evicting Plaintiff and/or selling the subject property to a third party." TRO App., Docket No. 9, at 15.

A.      Plaintiff's Version of Facts

Plaintiff's complaint, the facts of which are largely reproduced in Declaration of Gucharan Virk in support of the TRO application, asserts three causes of action: (1) promissory estoppel; (2) negligence; and (3) violation of California's unfair competition law ("UCL"). *See* Compl., Docket No. 9-3, ¶¶ 23-38. According to Ms. Virk, Plaintiff is a trust that owned the property located at 2200-2202 Browning Street in Berkeley, California (the "subject property"). Virk Decl., Docket No. 9-1, ¶¶ 2, 6. Gucharan Virk and Dhian Virk are the trustees for Plaintiff. *Id.* ¶ 2. On January 2, 2007, the Virks took out a deed of trust on the subject property from Defendant GMAC in the amount of $532,000, with the Mortgage Electronic Registration Systems, Inc. ("MERS") named as beneficiary. *Id.* ¶ 3. In or around March 2011, the Virks defaulted on their repayment obligations. *Id.* ¶ 4. In or around May 2011, the Virks began pursuing the possibility of a short-sale. *Id.* ¶ 5. In May 2011, the Virks executed an Individual Grant Deed, whereby they deeded their interest in the property to the Nanak Foundation Trust, with the Virks serving as its trustees. *Id.* ¶ 8. In July 2011, MERS assigned its beneficial interest in the trust to GMAC. *Id.* ¶ 7. In August 2011, GMAC substituted Executive Trustee Services, LLC ("ETS") as the new trustee for the deed of trust. *Id.* ¶ 8. On August 23, 2011, ETS executed a notice of default and election to sell under deed of trust, identifying arrearages in the amount of $25,466.45. *Id.* ¶ 9. On November 23, 2011, ETS executed a notice of trustee's sale, identifying a total outstanding balance on the loan of $556,036.22 and indicating a sale date of December 27, 2011. *Id.* ¶ 10. Presumably, the sale did not go through on this date, although the declaration does not specifically state as much.

On April 1, 2012, Plaintiff's realtor procured buyers for the subject property at a purchase price of $475,000. *Id.* ¶ 11. Plaintiff informed GMAC of the proposed sale. *Id.* On April 4, 2012, Plaintiff was sent a letter by GMAC stating that the loan was being reviewed for the proposed short sale. *Id.* ¶ 12. The next day, on April 5, 2012, Plaintiff was sent another letter by GMAC, in which it confirmed its acceptance of the short payoff of the property, agreeing to accept the proceeds

2

1  generated by the purchase as full and final satisfaction on the deed of trust. *Id.* ¶ 13. GMAC stated
2  that its agreement was subject to several conditions, including that the net proceeds be no less than
3  $433,535, that Plaintiff net zero from the sale, that any reduction in the approved closing costs be
4  added to the net proceeds, and that the schedule of closing costs be complied with. *Id.* Based on
5  this letter, Plaintiff proceeded with the short sale, with escrow scheduled to close on April 20, 2012,
6  which closing date was communicated to and accepted by GMAC. *Id.* ¶ 14.

7  Despite these promises, on the morning of April 20, 2012, ETS conducted a foreclosure sale
8  of the property, at which the property reverted back to GMAC for the purchase price of
9  $464,259.72. *Id.* ¶ 15. Plaintiff did not have the opportunity to close escrow on the short sale as a
10  result of the foreclosure sale taking place first. *Id.* ¶ 16. On May 3, 2012, GMAC transferred the
11  property through corporation grant deed to FNMA, who Plaintiff alleges had actual knowledge of
12  the pending short sale that was avoided by GMAC's conducting the foreclosure sale. *Id.* ¶ 17.

13  B.   <u>Omission of Full Letter Approving Short Sale</u>

14  In support of the allegation that GMAC agreed to accept short sale of the subject property,
15  Plaintiff submitted a one page letter with its TRO application. *See* Exhibits, Docket No. 9-2, Ex. I;
16  TRO Application, Docket No. 9, at 3:14-24. This document is attached to Plaintiff's complaint in
17  this matter, which was verified by Ms. Virk. *See* Compl., Docket No. 1-1, ¶ 18; *id.* at 12, Ex. I.

18  However, Defendants attached to their response to Plaintiff's TRO application a *two-page*
19  version of this letter. *See* Bankston Decl., Ex. 1. The second page, which was omitted from
20  Plaintiff's TRO application and verified complaint, states clearly as a condition of GMAC's
21  approval of the short sale that "[e]scrow . . . close on or before April 16, 2012." *See id.* This
22  condition renders baseless Plaintiff's argument that Defendants somehow prevented it from going
23  forward with the short sale by holding a foreclosure sale on April 20, 2012.

24  C.   <u>Incorrect Information Regarding Residence of the Virks</u>

25  In Plaintiff's TRO application, counsel argues that an injunction prohibiting Defendants from
26  initiating an unlawful detainer action would be in the public's interest because, among other reasons,
27  "[i]f an Unlawful Detainer action is allowed to be filed against the Subject Property, Plaintiff and his
28  family would become homeless." TRO Application, Docket No. 9, at 14:10-11. As Plaintiff is an

entity, not an individual, presumably counsel intended to refer to Mr. Virk as trustee for Plaintiff. Yet, bankruptcy filings by the Virks drawn to the Court's attention by Defendants indicate that the Virks, in fact, do not list the subject property as their residence. Rather, they show that the Virks both repeatedly list 2820 Regent St. in Berkeley, California as their mailing address and principal residence. *See* Defs.' RJN, Docket No. 17, Ex. 2 at 1, Ex. 3 at 33, Ex. 5 at 1, 8, Ex. 6 ¶ 13, Ex. 8.[1] In addition, while the deed of trust for the subject property contains a "1-4 Family Rider," suggesting that the subject property has, at most, four units, the Virks identified four extant leases for the subject property in their bankruptcy proceeding, meaning that this property was used for rental income, not their home as stated in the motion. *See* Defs.' RJN, Docket No. 17, Ex. 1 at 2, Ex. 3 at 21-22. Nor does the TRO application make reference to the bankruptcy proceeding the Virks initiated, their failure to identify the subject property as their principal residence in that proceeding, or their failure to identify potential litigation over the subject property in their petition. *See* TRO Application, Docket No. 9.

### III. DISCUSSION

A. Grounds for Sanctions

Courts have several grounds for granting sanctions, including Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and courts' inherent power to impose sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-48 (1991); *Barber v. Miller*, 146 F.3d 707, 709-11 (9th Cir. 1998).

Rule 11(b)(3) provides that, by submitting a paper to the court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." A court may, on its own, "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). If, after the party or attorney facing sanctions has a reasonable opportunity to

---

[1] Defendants request judicial notice of several documents filed in connection with the Virks' bankruptcy proceeding as well as the deed of trust for the subject property. Docket No. 17. The Court may take judicial notice of matters of public record. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Thus, judicial notice may be taken of all of these documents.

respond, "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "The imposition of sanctions under § 1927 requires a finding of bad faith." *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (2000).

Lastly, courts may levy sanctions under their "inherent power to impose sanctions for bad-faith conduct . . . ." *Chambers*, 501 U.S. at 46. "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49.

B.  As Against Kaivan Harouni

Here, as discussed above, counsel for Plaintiff, Kaivan Harouni, appears to have submitted false and misleading information to this Court, both indicating that the Virks reside at the subject property and submitting an exhibit that flagrantly omits exonerating information contained on its second page. Not only is the submission of this information apparently in clear violation of Rule 11, as, even if Mr. Harouni were not aware of this information, a minimal inquiry would have revealed it to be false or incomplete, but it also appears to have been done in bad faith, as Plaintiff props up its entire case on the omission of this information. In addition, as required by § 1927, the submission of this information has served to multiply the proceedings in this matter, as Defendants and the Court were left to respond to and review Plaintiff's ultimately withdrawn TRO application, which was rendered baseless by the revelation of the falsity of Plaintiff's submissions. Thus, the Court orders Plaintiff to show cause as to why sanctions should not issue against Mr. Harouni.

C.  As Against Gucharan Virk

While § 1927 does not permit sanctions against represented parties, such sanctions are still provided for under Rule 11 and the Court's inherent power to issue sanctions. *See Chambers*, 501 U.S. at 48. As with Mr. Harouni, Ms. Virk has submitted misleading information to the Court, most notably by omitting the second page of an exhibit to the verified complaint that serves to exonerate

Defendants from the wrongdoing alleged in the complaint and in Plaintiff's TRO application. Ms. Virk's omission appears to have been in bad faith, as the omitted page was available to Ms. Virk prior to institution of this lawsuit, yet conspicuously left out of her verified complaint. Thus, the Court orders Plaintiff to show cause as to why sanctions should not issue against Ms. Virk.

## IV. CONCLUSION

For the reasons discussed above, the Court orders Plaintiff to show cause as to why sanctions should not issue against Mr. Harouni and Ms. Virk.

Plaintiff must file with the Court no later than **December 13, 2012** a brief of no longer than ten pages stating his argument as to why sanctions should not issue against Mr. Harouni and Ms. Virk, including all relevant documents upon which it wishes the Court to rely.

If Defendant wishes to file a response of equal length to Plaintiff's brief, it must do so by no later than **December 20, 2012**. If Plaintiff wishes to file a reply brief of no longer than five pages, it must do so by no later than **December 27, 2012**.

A hearing on this matter will be held on **January 3, 2013** at 1:30 p.m.

IT IS SO ORDERED.

Dated: November 15, 2012

_____
EDWARD M. CHEN
United States District Judge